COURT OF APPEALS
DECISION
DATED AND FILED

July 14, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP2072-CR**

Cir. Ct. No. 2020CF209

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

---

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

V.

JOSE C. GARCIA,

    DEFENDANT-APPELLANT.

---

APPEAL from a judgment and an order of the circuit court for Marathon County: GREGORY B. HUBER and RICK T. CVEYKUS, Judges. *Affirmed*.

Before Stark, P.J., Hruz, and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1  PER CURIAM.   Jose Garcia appeals from a judgment of conviction, entered upon a jury's verdict, for first-degree sexual assault of a child, child enticement, and exposing genitals to a child, all as a repeater.  He also appeals the circuit court's order denying his motion for postconviction relief, wherein he challenged the effectiveness of his defense counsel's representation at trial.[1]  Because we conclude that Garcia has failed to demonstrate that his defense counsel was constitutionally ineffective, we affirm.

## BACKGROUND

¶2  The State charged Garcia in February 2020 with first-degree sexual assault of a child, child enticement, and exposing genitals to a child, all as a repeater, based on statements that Mary[2] made during a forensic interview earlier that month.  Mary, who was eleven years old at the time of the interview, stated that Garcia sexually assaulted her approximately four or five years earlier.  During the forensic interview, Mary also described a separate sexual assault committed against her by a different individual, Sam Harper.

¶3  Prior to the jury trial, the State moved, pursuant to the rape shield statute, to prohibit Garcia from introducing any evidence regarding the Harper sexual assault.  *See* WIS. STAT. § 972.11(2).  The State argued that the Harper sexual assault was "completely unrelated" to Garcia's case and that the issue

---

[1] The Honorable Gregory B. Huber presided over the trial.  The Honorable Rick T. Cveykus sentenced Garcia, entered the judgment of conviction, and entered the order denying Garcia's postconviction motion.

[2] Pursuant to the policy underlying WIS. STAT. RULE 809.86(4) (2023-24), we use pseudonyms when referring to the victims in this case.

All references to the Wisconsin Statutes are to the 2023-24 version.

would need to be litigated before trial if Garcia wished to introduce evidence of that assault. Garcia's defense counsel responded that he had "nothing to say on that matter at this time." At no point in the proceedings did defense counsel move to admit evidence of the Harper sexual assault.

¶4 A jury found Garcia guilty of all three charges. Thereafter, Garcia filed a motion for postconviction relief. He argued that defense counsel was constitutionally ineffective by failing to introduce evidence of the Harper sexual assault at trial under *State v. Pulizzano*, 155 Wis. 2d 633, 638-39, 656-57, 456 N.W.2d 325 (1990) (holding that, under limited circumstances, a defendant may present otherwise excluded evidence of a prior sexual assault of a child for the limited purpose of establishing an alternative source for the victim's sexual knowledge).

¶5 Garcia also asserted that defense counsel was constitutionally ineffective by failing to introduce evidence of a prior accusation made by Mary against Garcia in January 2017, as described in a disclosed police report. According to the police report, Mary's father informed law enforcement that Mary had told him that Garcia may have sexually assaulted her "2-3 years ago" while Garcia was intoxicated. In the police report, Mary's father is described as stating that Mary thought the incident may have been "a bad dream." Garcia was not prosecuted at that time, and Garcia argued that defense counsel should have introduced this report to discredit Mary.

¶6 At a *Machner*[3] hearing, defense counsel testified that he believed the evidence concerning the Harper sexual assault was inadmissible under the rape

---

[3] *See State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

shield law and that he "couldn't figure a way to get it in." Counsel could not recall whether he considered introducing the evidence under *Pulizzano*.

¶7      Regarding the police report concerning Mary's prior sexual assault allegation against Garcia, defense counsel testified that he had considered using the information contained in the report but "decided it would be a bad idea." While defense counsel agreed that it was possible the evidence would have allowed the jury to find that Mary "may have dreamed about" the allegations against Garcia, counsel stated that "[i]t would also be possible that the jury would see it more as" a separate accusation, i.e., a second sexual assault, and that Garcia "beat the rap." Counsel further explained that "[b]ringing up another accusation seemed … rather risky. It may just start piling on more accusations, which would work against us." In addition, while not a major concern, defense counsel agreed that one "possible downside of presenting evidence from a victim's father is to show an emotional dad on the stand to the jury."

¶8      The circuit court denied Garcia's motion for postconviction relief, although it noted that defense counsel made "concerning statements" regarding misunderstanding the police report and "not seeming to know *Pulizzano* existed."[4] With respect to the Harper sexual assault, the court assumed without deciding that defense counsel's performance was constitutionally deficient and that evidence concerning the assault was admissible. However, the court concluded that Garcia had failed to demonstrate that defense counsel's deficient performance was prejudicial. The court reasoned that evidence of the Harper sexual assault would

---

[4] Garcia initially raised a third ineffective assistance of counsel claim, but he withdrew that claim prior to the circuit court's decision.

not have detracted from the "incredibl[y] damaging" other-acts evidence from another child victim, Alice, or from the fact that the jury found Mary credible.

¶9 The circuit court further concluded that Garcia had failed to prove that defense counsel performed deficiently by not introducing the contents of the police report. The court found that the sexual assault described in the police report was the same sexual assault at issue during the trial, and it accepted the fact that defense counsel mistakenly believed that the report described a separate sexual assault. Nonetheless, the court found that "the strategic analysis does not change" and that

> [w]hile there is a reasonable argument, especially in hindsight, that this evidence could've been helpful to the defense and it questioned the memory of the victim, it is just as likely the jury could've seen it as evidence the victim did report this offense not once but twice: once to her father when it happened, and then again three years later.

In addition, the court reasoned that "[a] jury hearing the victim reported the assault against the defendant not once but twice would've had the ability to believe that that report was more truthful and that could've backfired against the defendant, especially seeing that it would be a likely contemporaneous report to the alleged assault."

¶10 Garcia now appeals.

## DISCUSSION

¶11 "To demonstrate that counsel's assistance was ineffective, the defendant must establish that counsel's performance was deficient and that the deficient performance was prejudicial." *State v. Breitzman*, 2017 WI 100, ¶37, 378 Wis. 2d 431, 904 N.W.2d 93. "If the defendant fails to satisfy either prong,

we need not consider the other." *Id.* "Whether a defendant was denied effective assistance of counsel is a mixed question of law and fact." *Id.* "The factual circumstances of the case and trial counsel's conduct and strategy are findings of fact, which will not be overturned unless clearly erroneous; whether counsel's conduct constitutes ineffective assistance is a question of law, which we review de novo." *Id.*

## I. Harper sexual assault

¶12 Garcia argues that the circuit court erred by denying his postconviction motion because his defense counsel was constitutionally ineffective by failing to introduce evidence of the Harper sexual assault.

¶13 In her forensic interview, Mary stated that Harper sexually assaulted her when she was eight years old while she was visiting his house. She explained that Harper had brought her into his locked bedroom to "talk" and tried to make her touch his penis while his girlfriend knocked on the door outside. Mary also stated that Harper put his hand down her pants and touched her vagina. After Harper picked her up, Mary "kicked him [in] the stomach."

¶14 According to Garcia, evidence concerning the Harper sexual assault was admissible pursuant to *Pulizzano*, the allegations made against Harper "were very similar" to those against Garcia, and its admission could have allowed the jury to make "a reasonable inference that [Mary] had either consciously or unconsciously conflated the two incidents, calling into question whether one or both of the incidents had occurred." Garcia further contends that the Harper sexual assault "was especially relevant [to] whether [Garcia] had in fact digitally penetrated" Mary because Mary's statements in the forensic interview "would allow one to infer she had been digitally penetrated" in each assault, and

"[r]ubbing [Mary]'s vaginal area, while sexual assault of a child, would not be sexual intercourse with a child. Intercourse with a child under the age of 12 mandated [at least] a 25-year prison sentence. Sexual contact with a child under the age of 12 does not."

¶15    Like the circuit court, we assume without deciding that defense counsel performed deficiently by failing to seek admission of evidence concerning the Harper sexual assault. In doing so, we also assume without deciding that the evidence was admissible under *Pulizzano*. With these assumptions in mind, we conclude that the State's case against Garcia was strong, and there is not a reasonable probability of a different result had counsel not allegedly erred by failing to introduce evidence of the Harper sexual assault. *See Strickland v. Washington*, 466 U.S. 668, 694 (1984); *State v. Sholar*, 2018 WI 53, ¶46, 381 Wis. 2d 560, 912 N.W.2d 89 ("[A] defendant need not prove the jury *would have* acquitted him, but he must prove there is a *reasonable probability* it would have, absent the error." (formatting altered)).

¶16    In the portion of the forensic interview played for the jury,[5] Mary explained the circumstances surrounding Garcia sexually assaulting her. Mary stated that she had been dropped off at Garcia's house to spend the night when she was around seven years old. While at Garcia's house, Mary played in the pool with Alice, another child who she believed was related to Garcia. After Alice went to sleep that night, Garcia, who was "really drunk" to the point where he had

---

[5] Neither party provides a record citation indicating which portion(s) of the forensic interview were played for the jury, and the trial transcript does not provide an answer. Based on the parties' briefs, however, it appears undisputed that the State played the entire portion of the interview wherein Mary discussed the assault committed by Garcia.

trouble navigating the stairs, forced Mary to watch television with him in the living room. Mary stated that Garcia then "started putting his hands in [her] pants" and "his fingers inside of" her vagina, but she "slapped him in the hand" and said, "No." Garcia proceeded to again start "doing that" and attempted to "make [Mary] touch his private part." Mary explained that she "backed away" and "kicked him in the face" when Garcia approached. When Garcia approached again, Mary yelled for help.

¶17 Mary's trial testimony largely mirrored what she described in the forensic interview. Mary stated that her father had dropped her off at Garcia's house several times to be babysat, including once when her father was in the hospital, and that she believed the sexual assault occurred during the time her father was in the hospital. The State presented evidence that Mary's father was hospitalized on January 30, 2015.

¶18 Furthermore, the State successfully moved to admit other-acts evidence that Garcia sexually assaulted Alice multiple times when she was a child. Alice testified at trial that she spent weekends at Garcia's house for "many years," including one night when Mary was also at the house. Alice explained that Garcia began sexually assaulting her when she was around eight years old and stopped when she was around ten or eleven years old. She described the first assault wherein Garcia ran his hand "up [Alice's] leg" and started "touching [her] vagina" while she was lying on a couch in the living room. Alice further stated that, on one occasion, Garcia "asked [her] to suck his dick," but she refused.

¶19 The circuit court correctly concluded that there is not a reasonable probability of a different result had evidence of the Harper sexual assault been admitted because that evidence would not have detracted from the fact that the

jury found Mary credible or from the "incredibl[y] damaging" other-acts evidence. As the State explains,

> Mary's emotional forensic interview and trial testimony were powerful evidence, and the jury demonstrably found her credible. Mary's story was supported by Alice, who established that Garcia had the intent and motive to sexually assault young girls and had a habit of doing so in the very same living room where he assaulted Mary. And neither child had any apparent motive to lie about what Garcia did to them.

Aside from claiming that Mary "did not present overly compelling testimony at trial," Garcia does not adequately address the weight of the evidence against him. Indeed, Garcia's defense counsel emphasized to the jury the perceived discrepancies in Mary's recollection of the sexual assault, which Garcia highlights on appeal, but the jury nonetheless believed Mary.

¶20    Moreover, contrary to Garcia's arguments, there is not a reasonable probability that, had evidence of the Harper sexual assault been admitted, the jury would have believed that Mary confused or conflated the two sexual assaults. In addition to the foregoing analysis, we agree with the State that Garcia's suggestion that Mary was confused is "highly unlikely given Mary's detailed descriptions of both assaults," including the distinct manner in which the assaults occurred and the circumstances surrounding each assault. For example, and as the circuit court found, Garcia's assault involved sexual intercourse, whereas Mary made no such allegation about the Harper sexual assault. Further, Mary explained that Harper brought her into the bedroom during the day to "talk," whereas an intoxicated Garcia invited her into the living room late at night to watch television.

¶21    Therefore, it is likely the jury would have believed that both sexual assaults occurred, and, as the State argues, "[t]here is no reasonable probability

that the jury would be persuaded by Garcia's unsupported speculation that Mary could have mixed up the two assaults."

## II. Police report

¶22    Garcia also argues that the circuit court erred by rejecting his argument that his defense counsel was constitutionally ineffective when counsel failed to introduce evidence of the prior accusation made by Mary against Garcia in January 2017, as described in the disclosed police report.

¶23    Based on the circuit court's factual findings, which are supported by the record, we conclude that defense counsel did not perform deficiently.  "To establish that counsel's performance was deficient, the defendant must show that it fell below 'an objective standard of reasonableness.'"  *Breitzman*, 378 Wis. 2d 431, ¶38 (citation omitted).  "In general, there is a strong presumption that trial counsel's conduct 'falls within the wide range of reasonable professional assistance.'  Additionally, '[c]ounsel's decisions in choosing a trial strategy are to be given great deference.'"  *Id.* (alteration in original; citations omitted).

¶24    As an initial matter, neither party challenges the circuit court's finding that the police report described the same sexual assault that was at issue at trial—i.e., Mary did not disclose a separate sexual assault to her father in 2017— contrary to defense counsel's belief as testified to at the *Machner* hearing.

¶25    That said, Garcia does appear to challenge the circuit court's finding that defense counsel knew of the police report and its contents prior to trial. Findings of fact, including credibility determinations, will be affirmed on appeal as long as the evidence would permit a reasonable person to make the same finding.  *State v. Wiskerchen*, 2019 WI 1, ¶30, 385 Wis. 2d 120, 921 N.W.2d 730;

*State v. Jenkins*, 2007 WI 96, ¶33, 303 Wis. 2d 157, 736 N.W.2d 24. Here, defense counsel testified at the *Machner* hearing that he had considered using the information contained in the police report at trial, but he decided against it. The circuit court credited defense counsel's testimony by finding that he had a strategic reason for not introducing the evidence contained in the police report, despite the fact that counsel mistakenly believed that the report described a separate assault. Given defense counsel's testimony, and the lack of evidence suggesting that counsel was not aware of the police report before trial, the court's finding that counsel considered the police report prior to trial is not clearly erroneous.

¶26 Garcia further contends that defense counsel's decision not to introduce the contents of the police report was not objectively reasonable. Garcia asserts that "[w]hile it may have been wise not to introduce the evidence if it tended to show defendant might have committed a separate sexual assault, the same would not be true if it was about the same assault." Focusing on the portion of the report wherein Mary's father purportedly commented that Mary thought the sexual assault may have been "a bad dream," Garcia argues that the "contents of the report are highly exculpatory in nature." He further argues that had the contents of the police report been admitted, "[t]he jury would have been allowed to infer this allegation was not acted upon in 2017 because it was lacking in credibility."

¶27 We conclude that while a reasonably competent attorney in defense counsel's position might have attempted to introduce the evidence contained in the police report for the reasons explained in Garcia's briefing, a reasonably competent attorney might also strategically choose not to introduce this evidence. Although defense counsel mistakenly believed that the police report described a separate assault, defense counsel provided reasonable strategic reasons for not

11

presenting the evidence, which apply with equal force when the police report's contents are more accurately understood.

¶28 For example, defense counsel explained that one reason he did not introduce the contents of the police report was that "[b]ringing up another accusation seemed … rather risky. It may just start piling on more accusations, which would work against us." He further testified that he would not want the same story repeated several times because "if you tell it loud enough, long enough, people will believe it." Consistent with defense counsel's strategic decision, as the circuit court determined, the jury could have reasonably interpreted the evidence to mean that Mary reported Garcia's sexual assault "not once but twice: once to her father when it happened, and then again three years later." Moreover, as defense counsel stated at the *Machner* hearing, there was a risk in putting "an emotional dad on the stand."

¶29 Finally, Garcia contends that defense counsel's testimony regarding his strategic decision not to introduce the contents of the police report was "self-serving and speculative." However, Garcia fails to reconcile this assertion with the circuit court's findings and credibility determination, both of which are supported by the record. *See Wiskerchen*, 385 Wis. 2d 120, ¶30; *Jenkins*, 303 Wis. 2d 157, ¶33.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.